# IN THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| **TONYA C. HUBER,** an individual,<br><br>Plaintiff, | Case No. 8:21-cv-229 |
|---|---|
| v. | |
| **WESTAR FOODS, INC. d/b/a HARDEE'S**<br><br>Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>TRIAL: OMAHA, NEBRASKA |

## RELEVANT FACTS

1. Tonya C. Huber ("Ms. Huber") is a woman who has a disability – diabetes - and a record of disability. Due to her disability, Ms. Huber is required to use insulin, test her blood sugar levels, and eat on a schedule throughout the day to maintain safe levels.

2. Ms. Huber worked at Westar Foods, Inc. d/b/a Hardee's ("Hardee's") as the store manager from December 3, 2018, until Hardee's fired her on December 26, 2019.

3. Ms. Huber maintained her position of store manager until her discharge date of December 26, 2019. In her position, Ms. Huber was responsible for hiring, training, and discipline of crew members, promoting management within the crew, overseeing costs, overseeing inspections and compliance, maintaining store equipment and facilities, and numerous other duties.

4. Ms. Huber's performance was exceptional, and she repeatedly received performance bonuses reflecting her exceptional performance.

5. Ms. Huber requested an accommodation based on her disability and record of disability, which was denied by Hardee's. In retaliation for her request, and due to her disability and record of disability, Ms. Huber was fired and denied wages.

6. In June 2019, Ms. Huber spoke with former supervisor, Matt Thayer ("Mr. Thayer"), and requested an accommodation which would allow Ms. Huber to store her insulin at room temperature, to which Mr. Thayer responded, "that is a you problem, not a me problem," and proceeded to deny Ms. Huber's request.

7. Cindy Kelchen ("Ms. Kelchen") became Ms. Huber's new supervisor after Mr. Thayer was fired. Ms. Huber once again requested an accommodation to store her insulin so that she would be able to administer it safely and routinely, but Ms. Kelchen denied this request.

8. Ms. Huber requested a place to store her insulin medication at room temperature. The office in Hardee's was 95 degrees, which was too hot to store her medication, and Ms. Huber was unable to store her medication in the kitchen or customer areas of Hardee's due to the needle required for her insulin.

9. Ms. Kelchen denied Ms. Huber's request, stating, "all I can suggest is for you to take a lunchbox and put some ice in it." Ms. Huber informed Ms. Kelchen that this would not work, because the medication needed to be stored at room temperature and the ice pack would cause it to be too cold. Ms. Kelchen had no response and just said she had to go.

10. Ms. Huber informed Ms. Kelchen that she needed a reasonable amount of time to test her blood sugar and eat during her shifts, as is required by Ms. Huber's disability. Ms. Kelchen denied this request and informed Ms. Huber that she "needed to work on managing her time."

11. On December 20, 2019, Ms. Huber was scheduled to begin working at 5:00 a.m., however, upon waking up, Ms. Huber began suffering from extreme medical complications

stemming from her disability, which required her to seek immediate emergency medical attention. Ms. Huber was kept at her doctor's office for the entirety of the day and had her son call Ms. Kelchen to inform her that Ms. Huber would be unable to work that day due to the emergent medical complications from her disability.

12. On December 21, 2019, Ms. Huber personally informed Ms. Kelchen of the complications that had occurred due to her disability and provided Ms. Kelchen with a copy of a work note provided to Ms. Huber by her physician. The note from Ms. Huber's physician requested that she be excused "from work due to illness through 12/26/19."

13. In response to this physician's note, Ms. Kelchen became extremely upset and started yelling at Ms. Huber over the telephone. Ms. Kelchen told Ms. Huber that she did not believe that Ms. Huber was unable to contact her personally the previous day to inform her of her absence.

14. On December 23, 2019, Ms. Huber emailed Hardee's Human Resources representative, Amy Rowe, and requested Family Medical Leave Act ("FMLA") paperwork, as recommended by Ms. Huber's doctor. Ms. Rowe responded, stating, "I have the off work slip you provided to your District Manager on 12/21/19 and do not need anything further from your physician at this time."

15. No paperwork was provided to Ms. Huber, so she once again requested FMLA paperwork from Ms. Rowe on December 24, 2019. Ms. Rowe once again ignored Ms. Huber's request for FMLA paperwork.

16. On Tuesday, December 24, 2019, Ms. Rowe emailed Ms. Huber asking if she was available to speak with Ms. Kelchen and Ms. Rowe over the phone at 2:00 p.m. that afternoon or the morning of Thursday, December 26, 2019, at 9 a.m. Ms. Huber responded to this email stating,

"my condition is not stable yet, saw the Dr yesterday…I am still not well enough to have a work related conversation."

17.  On Thursday, December 26, 2019, Ms. Huber received a text message from Ms. Kelchen, stating, "meet me at 3pm." Ms. Huber was informed not to report to work or bring her keys.

18.  In a letter dated December 26, 2019, Ms. Huber was terminated by Amy Rowe due to her absences from work on December 20 and December 21, 2019. The termination letter further indicated that Ms. Huber was being denied FMLA benefits for the dates of December 20 and December 21, 2019.

**PARTIES**

19.  Plaintiff Tonya C. Huber ("Ms. Huber") is a woman who has a disability – diabetes – and was fired from Hardee's on December 26, 2019, after requesting FMLA leave for medical complications from her diabetes. Ms. Huber was a store manager at Hardee's at the time that she was fired. In order to keep her diabetes under control, Ms. Huber requires a place to store her insulin that is room temperature, time to eat, and time to test her blood sugar levels throughout the day.

20.  Defendant Westar Foods, Inc., d/b/a Hardee's, is a fast-food chain with locations throughout Nebraska and Iowa.  Hardee's offers breakfast, lunch and dinner to patrons. At the time of Ms. Huber's termination, Hardee's employed over 200 employees.  Hardee's is actively conducting business in Nebraska, with over seven (7) locations in Nebraska employing Nebraska residents and serving Nebraska customers.

**JURISDICTION & VENUE**

21. This matter arises under federal and state law. This Court had jurisdiction pursuant to 28 U.S.C. §1331 based on Ms. Huber's federal claims set forth in this Complaint. This Court has supplemental jurisdiction over Ms. Huber's state law claims.

22. On February 13, 2020, Ms. Huber's dual filed her charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC") (Charge Number NEB 1-19/20-2-51128-RS), and the Equal Opportunity Commission ("EEOC") (Charge Number 32E-2020-00283). Ms. Huber received the NEOC's determination on March 22, 2021, and received the EEOC's Notice of Right to Sue on May 5, 2021. (A true and correct copy of Ms. Huber's Notice of Right to Sue is attached as Exhibit A to this Complaint).

23. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2), because the acts complained of were orchestrated from, planned in and conducted in this District.

**EMPLOYEE IS A QUALIFIED INDIVIDUAL WITH A DISABILITY**

24. The Americans with Disabilities Act ("ADA") prohibits discrimination against a qualified individual with a disability with respect to discharge. Under the ADA, an individual is "disabled" if she satisfies one of three conditions:

1) she has a physical or mental impairment that substantially limits one or more of her major life activities;

2) has a record of such an impairment;

3) or is regarded by her employer as having such an impairment.

U.S.C. § 12102(1).

25. A disabled individual must demonstrate impairment that "substantially limits" one or more major life activities. 42 U.S.C. § 12102(2). According to the ADA Amendments of 2008,

effective January 1, ,2009, "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 29 C.F.R. § 1630.2(j)(1). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating and working." 42 U.S.C.A. § 12102(2)(A).

26. Ms. Huber has a disability – diabetes – and a record of disability. Due to her disability, Ms. Huber is required use insulin, test her blood sugar levels, and eat on a schedule throughout the day to maintain safe levels. Ms. Huber is able to perform all necessary functions and responsibilities of her job at Hardees with reasonable accommodations.

27. Although Ms. Huber requested an accommodation to store her insulin in a temperature-controlled environment so that she would be able to administer it safely and routinely, this request was denied by Hardee's management. Ms. Huber also requested a reasonable amount of time to check her blood sugar levels and eat during her shifts. This request was also denied by Hardee's management.

**CLAIM 1**
**VIOLATION OF STATE AND FEDERAL LAW**
**PROHIBITING DISCRIMINATION BASED ON**
**DISABILITY**
ADA Amendments Acts of 2008
42 U.S.C. § 12101 *et seq.*
Neb. Rev. Stat. § 48-1107.02

28. Ms. Huber incorporates by reference paragraphs 1 through 27, *supra*, as if fully set forth.

29. Where, as here, a plaintiff alleges discrimination on the bases of disability, a plaintiff must show that she has a disability, is a qualified individual, and has suffered an adverse employment action because of that disability. 42 U.S.C. § 12112(a).

30. Ms. Huber has diabetes, can perform her job with reasonable accommodations, and was fired by Hardee's management.

31. Following reasonable requests for accommodation, Hardee's fired Ms. Huber on December 26, 2019.

**CLAIM II**
**VIOLATION OF STATE AND FEDERAL LAW**
**PROHIBITING DISCRIMINATION**
**BASED ON RECORD OF DISABILITY**
ADA Amendments Act of 2008
42 U.S.C. § 12101 *et seq.*
Neb. Rev. Stat. § 48-1107.02

32. Ms. Huber incorporates by reference paragraphs 1 through 31, *supra*, as if fully set forth.

33. An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that has substantially limited one or more major life activities.

34. Ms. Huber has a history of disability – diabetes.

35. Ms. Huber's disability requires her to test her blood sugar levels, inject insulin, and eat on a schedule throughout the day to maintain safe levels of blood sugar.

36. Ms. Huber's diabetes limits her ability to perform duties at her place of employment without the necessary and reasonable accommodations.

37. After learning of Ms. Huber's history of disability, Hardees fired her.

**CLAIM III**
**VIOLATION OF STATE & FEDERAL**
**LAW PROHIBITING**
**DISCRIMINATION BASED ON PERCEIVED DISABILITY**
ADA Amendments Acts of 2008
42 U.S.C. § 12101 *et seq.*
Neb. Rev. Stat. § 48-1107.02

38. Ms. Huber incorporates by reference paragraphs 1 through 37, *supra*, as if fully set forth.

39. The Americans with Disabilities Amendments Act ("ADAAA") prohibits retaliation against employees for requesting a reasonable accommodation under the ADAAA. In order to establish a prima facie case of retaliation, a plaintiff must establish: (1) that she engaged in protected activity, (2) that she suffered an adverse employment action, and (3) that the protected activity caused the adverse employment action. 42 U.S.C § 12203(a).

40. Ms. Huber, who has diabetes, was denied reasonable accommodations in June of 2019, after requesting a place to store her insulin at room temperature. Her manager at the time, Matt Thayer, responded to her request for an accommodation by stating, "that is a you problem, not a me problem," and proceeded to deny Ms. Huber's request.

41. Shortly after Mr. Thayer denied Ms. Huber's request for an accommodation, he was replaced by Cindy Kelchen. Ms. Huber once again requested an accommodation to store her insulin so that she would be able to administer it safely and routinely, but this request was denied by Ms. Kelchen.

42. Ms. Huber was never offered a reasonable accommodation to store her medication at Hardee's and was repeatedly denied an accommodation by Hardee's management.

43. Ms. Huber requested a reasonable amount of time to check her blood sugars and eat during her shifts and this was denied by Ms. Kelchen. In response to Ms. Huber's request, Ms.

Kelchen stated that "she needed to work on managing her time." Ms. Huber also needed time off due to the diabetes-related-illness and was fired within days of Hardees receiving her request.

44.     Ms. Huber needed time off due to complications related to her diabetes.

45.     While Ms. Huber was off work per her physician's instructions, Hardee's fired her due to two (2) days of disability related absence.

## CLAIM IV
## VIOLATION OF FEDERAL LAW
## PROHIBITING INTERFERENCE WITH FMLA RIGHTS
Family Medical Leave Act of 1993
29 U.S.C. § 2615

46.     Ms. Huber incorporates by reference paragraphs 1 through 45, *supra*, as if fully set forth.

47.     On December 23, 2019, Ms. Huber emailed Hardee's Human Resources representative, Amy Rowe, and requested Family Medical Leave Act ("FMLA") paperwork, as recommended by her physician. Ms. Rowe responded, stating, "I have the off work slip you provided to your District Manager on 12/21/19 and do not need anything further from your physician at this time."

48.     No paperwork was provided to Ms. Huber, so she once again requested FMLA paperwork from Ms. Rowe on December 24, 2019. Ms. Rowe once again ignored Ms. Huber's request for FMLA paperwork and instead requested a meeting with Ms. Huber and Ms. Kelchen that afternoon or on Thursday, December 26. Notably, each of these times and dates were within the time frame that Ms. Huber's physician indicated that she would not be able to work due to illness.

49. Ms. Huber subsequently received a text message from Ms. Kelchen stating that a meeting was set for 3 p.m. on Thursday, December 26. Ms. Huber was informed to not report to work or bring her keys.

50. Ultimately, Hardees terminated Ms. Huber within three (3) days of Ms. Huber requesting FMLA leave.

**CLAIM V**
**VIOLATION OF FEDERAL LAW**
**PROHIBITING RETALIATION FOR EXERCISING FMLA RIGHTS**
Family Medical Leave Act of 1993
29 U.S.C. § 2615

51. Ms. Huber incorporates by reference paragraphs 1 through 50, *supra*, as if fully set forth.

52. On December 23, 2019, Ms. Huber emailed Hardee's Human Resources representative, Ms. Rowe, and requested the Family Medical Leave Act ("FMLA") paperwork, as recommended by Ms. Huber's doctor. Ms. Rowe responded, stating, "I have the off work slip you provided to your District Manager on 12/21/19 and do not need anything further from your physician at this time."

53. No paperwork was provided to Ms. Huber, so she once again requested FMLA paperwork from Ms. Rowe on December 24, 2019. Ms. Rowe once again ignored Ms. Huber's request for FMLA paperwork.

54. In a letter dated December 26, 2019, Ms. Huber was terminated by Ms. Rowe due to her absences from work on December 20 and December 21, 2019. The termination letter further indicated that Ms. Huber was being denied FMLA benefits for the dates of December 20 and December 21, 2019.

## **REQUEST FOR RELIEF**

Ms. Huber requests judgement in her favor awarding the following:

1. Damages for Ms. Huber's lost and future wages based on her termination;

2. Damages for Ms. Huber's emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life;

3. Damages for Ms. Huber's out-of-pocket expenses for mental health treatment;

4. Punitive damages for Hardee's failure to act in good faith to reasonably accommodate Ms. Huber;

5. Liquidated damages for Hardee's willful acts;

6. Costs and attorney fees; as allowed by law, and

7. Such other and further relief as the Court deems appropriate.


PLAINTIFF REQUESTS A JURY TRIAL IN OMAHA, NEBRASKA


DATED: June 17, 2021.

By: s/Alexis S. Mullaney
Alexis S. Mullaney #25908
SODORO, MOONEY, LENAGHAN, LLC
13924 Gold Circle
Omaha, Nebraska 68144
Phone: (402) 504-9346
Fax: (402) 932-1662
*Attorney for Plaintiff*

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To: | Tonya C. Huber | From: | St. Louis District Office<br>1222 Spruce Street<br>Room 8.100<br>Saint Louis, MO 63103 |
|---|---|---|---|

**Exhibit A**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32E-2020-00283 | Joseph J. Wilson,<br>State & Local Program Manager | (314) 798-1930 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Lloyd J. Vasquez, Jr.,**
**District Director**

May 5, 2021
*(Date Issued)*

cc:
WESTAR FOODS, INC. D/B/A/ HARDEE'S
c/o Bonnie Boryca
ERICKSON SEDERSTROM
1033 Regency Pkwy Dr Ste 100
Omaha, NE 68114

Alexis Mullaney
SODORO MOONEY LENAGHAN
13924 Gold Circle
Omaha, NE 68144

Enclosure with EEOC
Form 161-B (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --  Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"**Actual**" disability or a "**record of**" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"**Regarded as**" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.