IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TONYA C. HUBER,<br><br>            Plaintiff,<br><br>v.<br><br>WESTAR FOODS, INC.,<br><br>            Defendant. | 8:21CV229<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on plaintiff Tonya C. Huber's ("Huber") Unopposed Motion for Reconsideration (Filing No. 86) asking the Court to reconsider her Motion for Partial Summary Judgment (Filing No. 41) and her Motion to Strike (Filing No. 55). For the reasons that follow, Huber's motion to strike is granted, but her motion for partial summary judgment is denied.

I.     BACKGROUND

The full facts of this case are laid out in the Court's prior order (Filing No. 66). To briefly summarize, defendant Westar Foods, Inc.'s ("Westar") owns and operates several Hardee's fast-food restaurants in Nebraska, including in the town of Elkhorn. Huber became the store manager of the Elkhorn location on December 3, 2018. As store manager, she was responsible for hiring, training, and disciplining crew members, as well as ensuring the safety and maintenance of the store. Before working for Westar, Huber worked in retail-management positions for several years at Burger King, Wendy's, and Payless Shoes. She holds a master's degree in business administration as well as a "certified professional project management" certification from the University of St. Thomas in Minnesota.

Huber has diabetes, which qualifies as a disability under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* On June 17, 2021, Huber filed this lawsuit (Filing No. 1), asserting claims for disability discrimination in violation

of the ADA and the Nebraska Fair Employment Practice Act ("NFEPA"), Neb. Rev. Stat. § 48-1101 *et seq*. Huber also brought interference and retaliation claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, alleging Westar fired her "[f]ollowing reasonable requests for accommodation" and "[a]fter learning of [her] history of disability."

The parties filed cross-motions for summary judgment on September 9, 2022. Westar asked for "entry of summary judgment on all claims." Huber sought partial summary judgment as to Westar's "affirmative defenses of failure to mitigate damages and after-acquired evidence." Huber also moved to strike two affidavits submitted by Westar in opposition to Huber's motion for partial summary judgment, arguing they contained expert testimony and information that was not timely disclosed.

On January 17, 2023, the Court granted Westar's motion for summary judgment on all claims (Filing No. 66). *See Huber v. Westar Foods, Inc.*, No. 8:21CV229, 2023 WL 202295, *7-8 (D. Neb. Jan. 17, 2023), *rev'd and remanded*, 106 F.4th 725 (8th Cir. 2024), *reh'g en banc granted, opinion vacated*, No. 23-1087, 2024 WL 3892871 (8th Cir. Aug. 21, 2024), *on reh'g en banc*, 139 F.4th 615 (8th Cir. 2025), and *aff'd in part, rev'd in part and remanded*, 139 F.4th 615 (8th Cir. 2025). Having done so, the Court found it unnecessary to consider Huber's motion for partial summary judgment and motion to strike. That is no longer true.

After a rehearing en banc, the United States Court of Appeals for the Eighth Circuit reversed this Court's grant of summary judgment in part, remanding for further proceedings on Huber's FMLA interference claim and otherwise affirming. *See Huber v. Westar Foods, Inc.*, 139 F.4th 615, 628 (8th Cir. 2025). The Eighth Circuit specifically noted that the Court could consider Huber's motion to strike and motion for partial summary judgment on remand. *See id.* at n.2.

2

## II. DISCUSSION

### A. Motion to Strike

Westar made its initial disclosures under Federal Rule of Civil Procedure 26 on October 8, 2021 (Filing No. 15). Those disclosures listed four individuals likely to have discoverable information: Amy Rowe ("Rowe"), Cindy Kelchen ("Kelchen"), Matt Thayer, and Huber. Westar described Rowe, its Human Resources ("HR") consultant, as someone who had "[k]nowledge of [Huber's] termination and of [Westar's] policies and procedures." It described Kelchen, Huber's supervisor, as someone who had "[k]nowledge of [Huber's] work performance at relevant times."

Huber's "Interrogatory No. 8" asked Westar to identify "every principal or material fact [Westar] relies on to support its second affirmative defense" that Huber failed to mitigate her damages. On December 17, 2021, Westar responded the defense was based on Huber's failure to promptly "take affirmative steps to take on new employment" and that discovery had "not yet been conducted" to determine "material facts in support." (Filing No. 56-4). Huber's "Interrogatory No. 15" asked Westar to identify "any individual [it] expect[s] to call as an expert witness." Westar replied that it had not yet determined whether it would call any expert witnesses. It is undisputed that Westar never supplemented these disclosures.

The magistrate judge set the following discovery deadlines: (1) expert witness disclosures and reports by May 6, 2022; (2) depositions by July 1, 2022; (3) dispositive motions by September 9, 2022; and (4) motions to exclude expert testimony by October 7, 2022 (Filing Nos. 24, 35, 37).

Huber moved for partial summary judgment on September 9, 2022 (Filing No. 41) regarding two of Westar's affirmative defenses: failure to mitigate damages and after-acquired evidence. In support of that motion, Huber argues the "discovery process has removed any doubt regarding whether Ms. Huber took reasonable efforts to mitigate her

damages, and has revealed no after acquired evidence that could have formed the basis for Ms. Huber's termination." (Filing No. 43).

On September 30, 2022, Westar responded (Filing No. 46) that Huber has not mitigated her damages because she primarily applied for jobs "beyond the scope of [her] past employment duties, background, and experience"—many of which "had requirements beyond [her] training and experience." Westar relied on affidavits (Filing No. 47) by both Rowe and Kelchen. Rowe's affidavit (Filing No. 47-2) states—for the first time—that she is "very aware and familiar with the extreme worker shortage that has caused serious operational issues for Westar and other restaurants" in the area. Rowe declares her knowledge of severe shortages for both managers and frontline food-service workers is based on her work with Westar and "numerous articles" and HR "trade publications." She claims the worker shortage "is the norm within the entire restaurant and fast food industry in the Omaha region over these past three years" and "virtually all" restaurants in western Iowa and eastern Nebraska have had "numerous unfilled openings[.]"

Kelchen's affidavit (Filing No. 47-3) similarly alleges she is "very familiar and knowledgeable with the overall labor market" in the greater-Omaha area. She declares Westar in particular has experienced "severe worker shortages over the past three years[.]" Not only is she familiar with Westar's difficulty "finding sufficient numbers of managers and rank-and-file employees," but she is "also familiar with the posted job openings" of competitors. She maintains "all fast food restaurants" in the Omaha area "had numerous unfilled openings" from 2019 through 2022.

Huber then moved to strike these two affidavits, requesting the Court (1) disregard the affidavits in considering Huber's motion for partial summary judgment and (2) "enter an Order excluding from trial any testimony from Rowe and Kelchen regarding [Huber's] mitigation efforts." Huber argues Rowe's and Kelchen's "purported specialized knowledge in the fast-food industry" constitutes expert testimony and that Westar failed to timely "disclose any aspect of the opinions offered" in the affidavits "in any form" before

4

filing them to oppose Huber's motion for partial summary judgment. The Court, she argues, must exclude improperly disclosed evidence unless the failure was "harmless or substantially justified." *See Trost v. Trek Bicycle Corp.*, 162 F. 3d 1004, 1008 (8th Cir. 1998).

Westar counters that the affidavits are based on Rowe's and Kelchen's "first-hand knowledge" of the industry—not expert testimony. In reply, Huber contends that regardless of whether the affidavits contain expert testimony, Rowe and Kelchen were not even properly disclosed as lay witnesses "with knowledge relevant to Westar's mitigation of damages affirmative defense[.]"

The Court agrees the affidavits should be stricken. Federal Rule of Civil Procedure 26(a) requires parties to disclose the names, addresses, and telephone numbers of "each individual likely to have discoverable information—*along with the subjects of that information*—that the disclosing party may use to support its claims or defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). A party must supplement or correct its disclosure "in a timely manner" if the initial disclosures are incomplete. Fed. R. Civ. P. 26(e).

The requirements are even higher for expert witnesses. Subsection (a)(2) governs the disclosure of witnesses that may be used to present expert testimony at trial, requiring that a party "disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. Fed. R. Civ. P. 26(a)(2)(A). When the expert witness is "retained or specially employed to provide expert testimony in the case," a party must produce a detailed expert report, "[u]nless otherwise stipulated or ordered by the court." Fed. R. Civ. P. 26(a)(2)(B). For experts that are not specifically retained for litigation, such as treating physicians, parties must still disclose their identity and "the subject matter on which the witness is expected to present" expert opinion testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

5

Federal Rule of Civil Procedure 37(c) gives Rule 26(a) teeth. *See* 8B Charles A. Wright, Arthur R. Miller *et al.*, *Federal Practice & Procedure* § 2289.1 (3d ed.). Under Rule 37(c), failing to properly identify witnesses as required by Rule 26(a)(1) precludes a party from using the witness "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Rule 37(c)'s sanction is "self-executing" and does not require a motion. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 703 (8th Cir. 2018) (quoting Rule 37(c)(1)'s advisory committee note to the 1993 amendment).

In deciding whether an incomplete disclosure is justified or harmless, courts consider several factors, including "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which the introduction of such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Rodrick v. Wal-Mart Stores East. L.P.*, 666 F.3d 1093, 1097 (8th Cir. 2012).

Here, Westar failed to comply with the disclosure requirements under Rule 26(a)(1). Although Westar identified Rowe and Kelchen in its initial Rule 26 disclosures, it did not properly disclose the subjects it planned to have Rowe or Kelchen testify on. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring disclosure of the "subjects" of the discoverable information). In its disclosure, Westar only identified Rowe's knowledge of Huber's "termination and of [Westar's] policies and procedures" and Kelchen's knowledge of Huber's "work performance at relevant times." Westar never identified Rowe or Kelchen as witnesses with information relevant to its mitigation-of-damages affirmative defense, nor did it mention their knowledge about an industry-wide labor shortage. What's more, Westar failed to comply with its disclosure obligations under Rule 26(e), by not supplementing its initial disclosures or updating its interrogatory response that it had not determined "material facts in support" of this affirmative defense.

The Court is not persuaded by Westar's argument that Rowe's and Kelchen's industry experience "has been the subject of discovery in this case" and is therefore sufficient to put Huber on notice that they would testify about her efforts to mitigate damages or an industry-wide labor shortage. *Cf. Vanderberg*, 906 F.3d at 702 (concluding that producing hundreds of pages of medical records was not enough to put the challenging party on notice that a treating physician would testify as to causation in a personal-injury case).

Although a failure to describe a witness's subject-matter knowledge does not automatically require exclusion of the testimony, Westar has not shown that the failure was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c). Westar has not supplied a reason for its failure to disclose or supplement, and it has not responded to Huber's argument that its failure was not harmless. Huber has already deposed both Rowe and Kelchen without knowledge of their intended testimony. Westar has not shown that Huber was able to question either about "their knowledge of the labor market" in the region; "the alleged labor shortage in the fast-food industry" as a whole; or the "numerous articles" and "trade publications" Rowe read to form her opinions. Because Westar's failure to disclose was not substantially justified or harmless, the Court does not need to decide whether the affidavits qualify as expert testimony. The motion to strike the affidavits is granted. Rowe and Kelchen are prohibited from giving opinion testimony on the labor shortage in the region or restaurant industry generally.

      **B.**    **Motion for Partial Summary Judgment**

For purposes of Huber's partial-summary-judgment motion, the Court views the genuinely disputed facts in the light most favorable to Westar, the non-movant, and draws all reasonable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Summary judgment is proper if Huber shows that there is "no genuine dispute as to any material fact and that [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hester v. Dept. of Treas.*, 137 F.4th 684, 688 (8th Cir. 2025). "Where

the record taken as a whole could not lead a rational trier of fact to find for [Westar], there is no genuine issue for trial" and summary judgment on that issue is warranted. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

Huber bears the initial responsibility of identifying parts of the record that show a lack of a genuine dispute of material fact. *Id.* If she does, Westar "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Both parties must support their factual assertions "by citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A).

### 1.    Alleged Failure to Mitigate Damages

Even ignoring Rowe's and Kelchen's affidavits, there are genuine disputes of material fact regarding Huber's efforts to mitigate her damages. Employees alleging wrongful termination "must use reasonable efforts to mitigate their damages," *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir. 1988), by "seeking and accepting other suitable employment," *Mathieu v. Gopher News Co.*, 273 F.3d 769, 783 (8th Cir. 2001). "While the requirement of mitigating damages 'is not onerous and does not require success,'" it does require that Huber exercise "reasonable diligence." *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 502 (8th Cir. 1998) (quoting *Brooks*, 852 F.2d at 1065).

Under the reasonable-diligence standard, Huber must seek a job that is substantially equivalent to the one at issue. *Parrish v. Immanuel Med. Ctr.*, 92 F.3d 727, 735 (8th Cir. 1996). It does not require her to "go into another line of work, accept a demotion, or take a demeaning position," *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982), but she must make "an honest effort to find substantially equivalent work," *Brooks*, 852 F.2d at 1065. If she can do that, Westar "bears the burden of showing that there were suitable positions and that [Huber] failed to use reasonable care in seeking them." *Denesha*, 161 F.3d at 502.

8

Huber argues Westar has not supported its affirmative defense that she failed to mitigate her damages because her job search has been "extensive" and she has "not refused any roles that are substantially similar to the role she had with Hardee's." Westar counters that Huber failed to apply to "jobs reasonably comparable to her previous employment experience" because most of the jobs she allegedly applied for were not in the food-service industry and had requirements far beyond Huber's training and experience.

While Huber is not required to seek a job in the food-service industry in order to mitigate her damages, there is a triable issue for the jury whether Huber made "an honest effort to find substantially equivalent work." *See Brooks*, 852 F.2d at 1065 (concluding that a discharged trucker had made reasonable efforts to mitigate his damages when refusing an employment offer from a trucking company to pursue his own business venture). As Westar points out, it appears the lion's share of the jobs Huber allegedly applied to are not "substantially equivalent" to a general-manager position at a fast-food restaurant. *See Newhouse v. McCormick & Co.*, 110 F.3d 635, 641 (8th Cir. 1997) (noting that a plaintiff alleging wrongful termination has the duty to mitigate by seeking "suitable employment" that is "substantially equivalent to the one at issue").

Huber's deposition (Filing No. 47-7) and records documenting her job search (Filing No. 42-7) reveal she regularly sought jobs with duties vastly different from those of restaurant general manager. For example, Huber applied to many positions for which she lacked the basic prerequisites: a "wealth management financial planner" role requiring a specialized certification; a "data analyst" position requiring a bachelor's of science in computer science; a "senior quality specialist" role at ConAgra Foods requiring a bachelor's of science in food, biological, or chemical science; and a "facility manager" position requiring three years of experience supervising large buildings over 400,000 square feet—all qualifications and experience Huber did not have. Apart from the fact that some of these jobs have the term manager in the title, they hardly seem substantially comparable to running a Hardee's.

9

When pressed on her lack of qualifications for these positions and others, Huber responded repeatedly that she wanted to find work that would allow her to use her master's degree in business administration. While that may be true, seeking employment that utilizes an advanced degree is not the same as seeking a job "substantially equivalent to the one at issue." *Newhouse*, 110 F.3d at 641. Viewing the evidence in the light most favorable to Westar, there are genuine disputes of material fact regarding whether Huber exercised reasonable diligence in seeking comparable work. Huber's motion for partial summary judgment on Westar's affirmative defense of failure to mitigate damages is denied.

### 2. Alleged After-acquired Evidence

Huber has also moved for partial summary judgment on Westar's affirmative defense of after-acquired evidence. The after-acquired evidence doctrine applies when an employer fires an employee for an unlawful reason, but later learns of other conduct that "would have resulted in discharge had it come to the employer's attention[.]" *Smith v. AS America, Inc.*, 829 F.3d 616, 625-26 (8th Cir. 2016). In those situations, the doctrine limits the employee's damages to the period of time "from the date of the unlawful discharge, to the date the new information was discovered." *Id.* (quoting *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995)).

To succeed at trial, Westar will bear the burden of demonstrating that it would have fired Huber upon discovery of the evidence. *See id.* at 626. The wrongdoing must be "of such severity that [Huber] in fact would have been terminated on those grounds alone if [Westar] had known of it." *Id.* (quoting *McKennon*, 513 U.S. at 362-63). In evaluating an after-acquired-evidence defense, the Court "must look to [Westar's] actual employment practices and not merely the standards articulated in its employment manuals[.]" *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004).

Huber argues there is "no evidence" that she engaged in any conduct that would have independently led to her termination and that her record was "exemplary." But

Westar contends that during her deposition, Huber admitted she "went in [to work] sick" with the flu and vomiting on October 30, 2019. Moreover, Huber testified that in the days leading up to December 20, 2019, she was suffering from loose stools that were so serious she was "wearing diapers," yet she still reported for work. Huber also produced medical records during discovery that show she had been seriously ill for several days prior to December 20, 2019. According to Westar, going to work sick with vomiting and diarrhea violated its standards of conduct and its management policies on "reporting illness in food workers," which is a dischargeable offense. Westar claims it was not aware of the full extent of these incidents prior to discovery.

In reply, Huber contends that this does not qualify as after-acquired evidence because Westar was aware Huber was working while sick on October 31, 2019, and did not fire her then.[1] However, that is not quite Westar's contention. While Westar knew Huber was sick "prior to leaving" work on October 31 due to illness, Westar's argument is not that it was unaware she left work due to illness, but that she *arrived* to work already extremely ill. Westar asserts it was unaware that Huber was "very ill with a fever, diarrhea, and vomiting, to the point where she was wearing diapers, yet was still coming into work in the food service industry" in violation of its policies.

Though it's a close call, whether Westar would have terminated Huber's employment for reporting to work while extremely ill is a question of fact for a jury. *See Torgerson*, 643 F.3d at 1042 (explaining that on a motion for summary judgment, the Court does not make credibility determinations or weigh the evidence as those are "jury functions, not those of a judge"). Viewing the evidence in the light most favorable to

---

[1]On October 31, 2019, Huber sent a text message to other Westar managers, "[d]oes anyone have a manager that can release me – I am working with a high fever[.]" But when asked about leaving her shift early due to illness during her deposition, Huber replied, "I went in sick. I was already sick" and testified about additional symptoms.

11

Westar, there is a triable issue as to whether the evidence discovered by Westar would have led to Huber's termination. For these reasons,

IT IS ORDERED:

1. Plaintiff Tonya C. Huber's Unopposed Motion for Reconsideration (Filing No. 86) is granted.

2. Huber's Motion to Strike (Filing No. 55) is granted. Defendant Westar Foods, Inc. is precluded from relying on Cindy Kelchen's and Amy Rowe's opinion testimony regarding the labor shortage in the region or the restaurant industry.

3. Huber's Motion for Partial Summary Judgment (Filing No. 41) is denied.

Dated this 30th day of October 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge